# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br>**Jeffrey Foster,**<br>Debtor. | Chapter 11<br>Bankruptcy No. 22-06377<br>Honorable A. Benjamin Goldgar |

## PLAN OF REORGANIZATION
## DATED SEPTEMBER 5, 2022

This is Jeffrey Foster's (the "Debtor") Chapter 11 Plan of Reorganization (the "Plan").  It proposes paying allowed claims from future income generated by rents received, as well as the liquidation of real property.[1]

Generally, this Plan has five classes of claims – (1) a priority domestic support obligation which is not impaired, (2) secured claims not impaired (claims secured by rent-producing real property, which the Debtor will continue paying in compliance with the underlying note), (3) secured claims impaired (any allowed portion of the claim will be satisfied by the sale of real property that constitutes that claim's collateral), (4) secured claims impaired (claims which will be satisfied by excess proceeds of the sale of aforesaid real property), and (5) general unsecured creditors, which will be paid in full.

The Plan provides administrative priority for the allowed fees and expenses of bankruptcy counsel.  Some of the payment will be made from a retainer that counsel is holding and the remainder from the Debtor's property.  Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes. No priority tax clams are anticipated.

The Plan proposes that the existing disputes between the Debtor and PNC Bank, N.A. ("**PNC**") regarding the loans related to the Debtor's property on Fiesta

---

[1] As of the Petition Date, Subchapter V of the Bankruptcy Code was not an option for the Debtor; the sunset provision of the original enactment that raised the debt ceiling to $7,500,000 expired.  Subsequent to the Petition Date, Congress again increased the debt ceiling to $7,500,000 thereby enabling the Debtor to make the so-called Subchapter V designation.  The Debtor will be filing a motion to amend his bankruptcy petition to make this designation.  The Debtor is a subchapter V debtor, and this Plan is governed by subchapter V of the Bankruptcy Code, 11 U.S.C. 1181 *et seq*.

{00226705}

Way in Florida and Kilpatrick in Chicago will continue and any allowed claims in favor of PNC will be paid from the sale of the Fiesta Way property.

The dispute with PNC ripened into litigation the Debtor commenced in 2012, in the U.S. District Court for the Northern District of Illinois (the "District Court"). The Debtor's complaint asserted statutory and common law claims under, *inter alia,* the Fair Credit Reporting Act ("FCRA"). PNC filed a counterclaim seeking judgment against the Debtor (a) of approximately $1.4 million on account of loans secured by the Fiesta Way property and (b) of approximately $1.9 million on account of the Kirkpatrick property and foreclosure of a mortgage.

On March 25, 2020, the District Court entered summary judgment against the Debtor on his FCRA claims and in favor of PNC on its counterclaims related to the Fiesta Way and Kilpatrick properties. The summary judgment order ended the litigation in the District Court on the Fiesta Way loan and was thus appealed to the Seventh Circuit. This appeal has been fully briefed and oral arguments were presented. The parties recently requested relief from the automatic stay to allay any concerns that the stay bars the Seventh Circuit from ruling on the issues under appeal. The parties also were unable to resolve their dispute notwithstanding the involvement of the Seventh Circuit mediation program.

As to the Kilpatrick loan, the District Court directed PNC to submit a proposed order regarding the request to foreclose the mortgage, which PNC eventually submitted and which resulted in the entry of a judgment of foreclosure on June 2, 2021. PNC served notice in May of 2022, that it intended to sell the Kilpatrick property in the first week of June, 2022. This case was filed shortly before the scheduled foreclosure sale of the Kilpatrick property.

The plan proposes that the existing disputes with PNC regarding the loans on the Fiesta Way and Kilpatrick property will continue and any allowed claims in favor of PNC will be paid from the sale of the Debtor's real property in Fort Lauderdale, Florida. The timing of the sale will depend upon several factors, including any the timing and nature of a ruling from the Seventh Circuit, and the liquidation of PNC's claims in this case.

In additional to the PNC claims related to the Fiesta Way and Kilpatrick properties, PNC also holds a claim that is secured by the Debtor's rental property

The class of general unsecured creditors encompasses all creditors of the Debtor not in an earlier class. These include, most significantly, legal fees for the firm Boodell & Domanskis, LLC.

There are no claims of insiders, but if any such claims are levied, they will be subordinated and will not receive a distribution unless all other classes of creditors receive payment in full. Equity security holders will not receive a distribution.

{00226705}

All creditors should review this Plan in its entirety. **Your rights may be affected. You should read these papers carefully and discuss with your attorney. A Ballot Form is attached hereto as Exhibit A.**

Exhibits to this Plan[2] include:

A. Ballot

B. Liquidation Analysis

C. Monthly Operating Reports filed to date (without exhibits)

# ARTICLE 1.
# CLASSIFICATION OF CLAIMS AND INTERESTS

1.1. **Class 1**  Priority claim of Sandra Szeremata, a domestic support obligation of the Debtor.

1.2. **Class 2**  Secured Claim of PNC Bank, N.A., relating to 2156 N. Racine, Chicago, Illinois, as well as Secured Claim of Select Portfolio Servicing relating to 3716 N. Magnolia, Chicago, Illinois

1.3. **Class 3**  Secured Claims of PNC Bank, N.A., relating to 56 Fiesta Way, Fort Lauderdale, Florida, as well as the Secured Claim of The City of Fort Lauderdale relating to 56 Fiesta Way, Fort Lauderdale, Florida

1.4. **Class 4**  Secured Claim of PNC Bank, N.A., relating to 6201 N. Kilpatrick, Chicago, Illinois

1.5. **Class 5**  General Unsecured Claims: Allowed claims of creditors which are unsecured.

# ARTICLE 2.
# TREATMENT OF ADMINISTRATIVE CLAIMS AND TRUSTEE COMPENSATION

2.1 Unclassified Claims. Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

2.2 Administrative Expense Claims.

    a. *Professional Fees.* Each holder of an administrative expense claim allowed under §503 of the Bankruptcy Code will be paid in full from funds on hand, revenues generated by collection of outstanding rent, by application of a retainer on-hand, or upon such other terms as maybe agreed upon by the holder of the claim and the Debtor.

---

[2] Exhibits will be circulated to creditors for voting.

{00226705}

b. *Trustee Fees.* As of the propounding of this plan, the Debtor is current on fees to the United State Trustee. Any outstanding fees going forward shall be paid before the last day such fees are due.

c. *Subchapter V Trustee Fees*. All fees required to be paid to the appointed subchapter V Trustee pursuant to Court order shall be paid in full within 30 days of the Court's order approving such fees.

## ARTICLE 3.
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

3.1. <u>Class 1 – Priority domestic support obligation owed to Sandra Szeremata</u>

The claim in Class 1 relates to a domestic support obligation that the Debtor owes to Sandra Szeremata; the Debtor is paying this obligation timely. Pursuant to 11 U.S.C. 1129(a)(14), this plan cannot be confirmed unless the Debtor has paid all amounts payable on his domestic support obligation that first became payable after the date of the filing of the petition.

The Plan does not propose to alter the Debtor's obligation to Sandra Szeremata in any respect.

3.2. <u>Class 2 – Secured claims of PNC Bank, N.A., relating to 2156 N. Racine, Chicago, IL 60614, as well as Select Portfolio Servicing relating to 3716 N. Magnolia, Chicago, IL 60613</u>

The two claims in Class 2 relate to loans made for three-unit buildings from which the Debtor is receiving rental income. The Debtor is paying the holders of these claims adequate protection by making regular monthly payments to them under the terms of these creditors' respective notes, and has been granted use of their cash collateral for purposes of operating in chapter 11.

The Debtor proposes to continue paying these claims pursuant to the prebankruptcy notes and security agreement, and this plan does not intend to alter that treatment in any respect. These lenders' remedies in the event of default would remain unchanged, as would the events that trigger default.

Confirmation of the Plan would terminate the ongoing requirement that the Bankruptcy Court authorize use of these lenders' cash collateral.

The Debtor shall further provide these lenders adequate protection by his remaining current on payment of property taxes relating to these properties.

3.3. <u>Class 3 – Secured Claim of PNC Bank, N.A., relating to 56 Fiesta Way, Fort Lauderdale, FL 33301, as well as the secured claim of the City of Fort Lauderdale relating to the same property</u>

The Debtor believes the Class 3 Claim is adequately protected by an equity cushion of approximately $2.5 million. Until such time as the PNC litigation has

{00226705}

been resolved either through the entry of a final order that is not subject to any further appeal (a "Final Order") order or settlement, the Debtor shall have the right to retain the Fiesta Way property, subject to his obligation to pay real estate taxes and maintain a reasonable amount of insurance on the property. In the event a Final Order allowing PNC's claim with respect to the Fiesta Way property is entered (the "Allowed Fiesta Way Secured Claim"), the Debtor shall have up to 12 months to sell the Fiesta Way property and use the proceeds thereof to satisfy the Allowed Fiesta Way Secured Claim in full.

According to the Debtor's sworn schedules, the Fiesta Way property is worth approximately $4,010,800.00, allowing for several million dollars of equity above-and-beyond the claims held by PNC (approximately $1.4 million) and the City of Fort Lauderdale (approximately $3,000). There are no other liens on the property.

3.4. Class 4 – Secured Claim of PNC relating to 6201 N. Kilpatrick, Chicago, IL 60646

The Debtor proposes to provide for any Allowed secured claim of PNC with respect to the Kilpatrick property (the "Allowed Kilpatrick Secured Claim") by providing PNC with a new note secured by a mortgage on the Kilpatrick property (the "Kilpatrick New Loan"). The Kilpatrick New Loan shall bear interest at prime minus 1% and require interest only monthly payments for the first 59 months with a balloon payment on the 60th month. The Debtor will make the required payments from the proceeds received upon the sale of the Fiesta Way property. The Debtor shall sell the Fiesta Way property upon the earlier to occur of an Allowed Fiesta Way Secured Claim or an Allowed Kilpatrick Secured Claim. In either event, the Debtor shall have 12 months after the occurrence of either event to sell the Fiesta Way property.

From the effective date of the Plan through the date PNC obtains an Allowed Kilpatrick Secured Claim, the Debtor shall continue to pay the real estate taxes and insurance for the property.

3.5. Class 5 – General unsecured claims

The Debtor has scheduled various unsecured claims, and various unsecured claims have been filed on the claims docket. The Debtor will file a motion to designate a "last day to file claims," and within 30 days thereafter file objections to such claims as he deems objectionable.

Thereafter, the Debtor shall make full payment to all allowed claims within 90 days subsequent to the sale of 56 Fiesta Way, Fort Lauderdale, Florida. Interest at a rate of 1% per annum will be allowed all allowed general unsecured claims.

# ARTICLE 4.
# DESCRIPTION OF ASSETS (LIQUIDATION ANALYSIS) AND PROJECTED INCOME

4.1. <u>Assets of the Debtor/Liquidation Analysis</u>

The Debtor holds significant equity in real property. Notably, according to his sworn schedules, the amount owed PNC Bank, N.A., for 56 Fiesta Way is under $1.6 million; the value of this property exceeds $4 million. The amount owed PNC Bank, N.A. for 2156 N. Racine is approximately $330,000; the value of this property is just under $1.2 million. Finally, the amount owed Select Portfolio Servicing for 3716 N. Magnolia is approximately $585,000; the value for this property is slightly in excess of $1.2 million.

Additionally, the Debtor holds approximately $600,000 in a brokerage account. The Debtor also owns personal property with approximate aggregate values of $100,000.

To confirm the Plan, the Court must find that all creditors and equity interest holders that do not accept the Plan will receive at least as much under the Plan as such claim and equity interestholders would receive in a Chapter 7 liquidation. The Debtor submits that this is the case.

4.2. <u>Projected Income</u>

The Debtor must show that he will have enough cash over the life of the Plan to make the required Plan payments and operate its business.

The Debtor projects income to be derived from four potential sources: (a) ongoing rental income, (b) periodic service as a real estate broker, (c) the sale of the Fiesta Way property, and (d) any recovery from PNC on account of the Debtor's claims against PNC.

4.3 <u>Operations During Chapter 11 Proceeding</u>

The Debtor has obtained an order authorizing him to use the cash collateral of PNC Bank, N.A., (relating to 2156 N. Racine) and Select Portfolio Servicing (relating to 3716 N. Magnolia), and is making adequate protection to these creditors in compliance with the underlying note and security agreement.

The Debtor has timely filed monthly operating reports as they've come due and has submitted his required payment to the United States Trustee for the quarter ending June 30, 2022.

Attached as <u>Exhibit C</u> are the Debtor's operating reports filed in the Chapter 11 proceeding as of this date.

Subject to the above, the Debtor has estimated future income based upon past operations.

{00226705}

# ARTICLE 5.
# ALLOWANCE AND DISALLOWANCE OF CLAIMS AND ESTIMATION OF CLAIMS

5.1. <u>Last Day to File Proofs of Claim</u>. Concurrently with filing this Plan, the Debtor will submit a motion for the Bankruptcy Court to designate a last day to file proofs of claim. This date will be approximately 10 weeks from the entry of the Bankruptcy Court's order.

5.2. <u>Estimation of Claims</u>. The Debtor does not anticipate requesting that the Bankruptcy Court estimate any claims pursuant to §502(c) of the Bankruptcy Code.

5.3. <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and as to which either (a) a proof of claim has been filed or deemed filed, and the Debtor has filed an objection to the claim or proof of claim; or (b) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent or unliquidated.

Resolution of all disputed claims shall take place before the sale of the Fiesta Way property.

5.4. <u>Prepayment of Claims</u>. The Reorganized Debtor reserves the right to offer prepayment of claims to creditors before the expiration of the Plan without penalty or premium. The prepayment shall be conditioned upon no affect or impairment of the Reorganized Debtor's ability to satisfy his obligations under the Plan.

5.5. <u>Lapsed and Unclaimed Distributions.</u> Any distribution that has not been cleared within ninety (90) days of the date of thedistribution will lapse.  Lapsed distributions will revert to the Debtor.

If any distribution is returned as undeliverable, no further distributions to such creditor will be made unless the Debtor is notified in writing of the creditor's current address. Upon receipt of the notification, the Debtor will remit all missed distributions to the creditor without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Effective Date of the Plan. If any claims are not made within that time, all unclaimed distributions will revert to the Debtor. Nothing in the Plan will require the Debtor to attempt to locate any holder of an allowed claim.

# ARTICLE 6.
# PROVISIONS FOR EXECUTORY CONTRACTS

6.01 <u>Assumed Executory Contracts and Unexpired Leases</u>. The Debtor is party to six executory contracts as lessor for lessee's apartments. The Debtor seeks to assume his agreements with all parties.

# ARTICLE 7.
# GENERAL PROVISIONS

7.1. Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed inthe Code are used in this Plan. These definitions are supplemented by the following:

7.1.1. The Effective Date ("Effective Date") of the Plan will be the 30th day after the Order confirming the Plan is a final order.

7.1.2. The "Reorganized Debtor" shall refer to the Debtor as an entity created upon the entry of an order confirming the Plan.

7.2. Conditions to Effective Date. The following conditions precedent may affect the occurrence of the Effective Date: (1) failure to obtain confirmation; (2) modification of the Plan, which requires approval of the court; (3) the Order of Confirmation is vacated, amended, modified or stayed; or (4) the Order of Confirmation is the subject of any appeal, reconsideration or other review.

7.3. Remedies Upon Default. In the event that the Debtor fails to make its Plan payments when due, and does not cure any such default within 30 days of the occurrence of such default, creditors may seek relief from the Plan injunction to enforce the terms of the Plan or, if the case has been closed, may enforce the terms of the Plan without further relief from the Bankruptcy Court.

7.4. Severability. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.5. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of the entity.

7.6. Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.7. Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.8. Disbursing Agent. The Debtor will be the disbursing agent for the Debtor forthe purpose of distributions and payments to be made pursuant to the Plan.

7.9. Notice: Any Notice of Default shall be sent to the Debtor's counsel by e-mail to jstorer@wfactorlaw.com and wfactor@wfactorlaw.com, to the Debtor at 6201 N. Kilpatrick, Chicago, IL 60646, and shall be effective when sent. Debtor may notify creditors, in writing, of any change of address for either the Debtor or counsel.

{00226705}

# ARTICLE 8.
# DISCHARGE, RETURN OF PROPERTY AND VESTING OF ASSETS

8.1. <u>Discharge</u>. On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code. However, the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or of a kind specified in §1141(d)(6)(B). After the Effective Date, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

8.2. <u>Vesting of Assets</u>. On the Effective Date of the Plan, Debtor's right, title and interest in and to its assets shall vest with the Reorganized Debtor.

# ARTICLE 9.
# RETENTION OF JURISDICTION

9.1. The Bankruptcy Court shall retain jurisdiction over this Chapter 11 Case for all matters within the scope of the Court's post-confirmation jurisdiction, including for the following purposes:

(a) Resolution of any and all objections to claims and requests to estimate claims.

(b) Determination of all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date between (a) the Reorganized Debtor and any other party or (b) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case.

(c) The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

(d) Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

(e) Allowance of all claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Reorganized Debtor or its estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

(f) Entry of a Final Order closing the Chapter 11 Case.

Dated: September 5, 2022 **Jeffrey Foster,**

By: /s/ Justin R. Storer

{00226705}

William J. Factor (6205675)
Justin R. Storer (6293889)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:     (312)373.7226
Fax:     (847) 574-8233
Email: jstorer@wfactorlaw.com

{00226705}