# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made between PNC Bank, N.A. ("PNC") on the one hand, and Jeffrey Foster ("Foster") on the other.  PNC and Foster are individually referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on April 27, 2012, Foster commenced an action in the United States District Court for the Northern District of Illinois, captioned *Jeff Foster v. PNC Bank N.A. d/b/a PNC Mortgage*, case no. 1:12-cv-3130 (the "District Court Litigation");

WHEREAS, in the District Court Litigation, Foster asserted various state and federal claims allegedly arising out of PNC's servicing or administration of several loans, consisting of:

- A loan in the original principal amount of $1.1 million for a home located at 56 Fiesta Way, Fort Lauderdale, Florida 33301 (the "Fiesta Way Loan").  The Fiesta Way Loan is evidenced by an adjustable rate note dated January 30, 2004 (the "Fiesta Way Note") in favor of MidAmerica Bank, FSB.  The Fiesta Way Note is secured by a mortgage dated January 30, 2004 (the "Fiesta Way Mortgage").  The Fiesta Way Loan was modified by a loan modification agreement dated May 20, 2010 executed by Foster  (the "Fiesta Way Modification") (all collectively referred to as the "Fiesta Way Obligation");

- A Home Equity Line of Credit secured by the real property located at 6201 Kilpatrick Avenue, Chicago, Illinois 60646 (the "N. Kilpatrick Loan").  PNC alleges that the N. Kilpatrick Loan is evidenced by a note dated May 31, 2006 in favor of MidAmerica Bank in the original principal amount of $1.89 million (the "N. Kilpatrick Note").  PNC alleges the N. Kilpatrick Note is secured by an Equity Cash Line Credit Mortgage which PNC alleges Foster executed, and which was notarized and recorded with the Cook County Recorder of Deeds as Document No. 0617308074 on June 22, 2006 (the "N. Kilpatrick Mortgage") (all collectively referred to as the "N. Kilpatrick Obligation").

- A loan secured by the real property located at 3716 N. Magnolia, Chicago, Illinois 60613 (the "Magnolia Loan").  The Magnolia Loan is evidenced by a note dated June 27, 2003 in favor of National City Mortgage Co in the original principal amount of $778,500 (the "Magnolia Note").  The Magnolia Note is secured by a mortgage dated June 27, 2003 (the "Magnolia Mortgage").

- A loan secured by the real property located at 2156 N. Racine Avenue, Chicago, Illinois 60614 (the "Racine Loan").  The Racine Loan is evidenced by a note dated June 17, 2003 in favor of National City Mortgage Co in the original principal amount of $427,500 (the "Racine Note").  The Racine Note is secured by a

Initials:
PNC
Foster

mortgage dated June 17, 2003 (the "Racine Mortgage") (all collectively referred to as the "Racine Obligation").

- A loan secured by the real property located at 1022 W Montana Street, Chicago, Illinois 60614 (the "Montana Loan"). The Montana Loan is evidenced by a note dated June 17, 2003 in favor of National City Mortgage Co in the original principal amount of $350,000 (the "Montana Note"). The Montana Note is secured by a mortgage dated June 17, 2003 (the "Montana Mortgage").

WHEREAS, in its Memorandum Opinion and Order dated December 14, 2015, the district court in the District Court Litigation dismissed all of Foster's claims regarding all loans and mortgages other than the Fiesta Way Obligation and the N. Kilpatrick Obligation;

WHEREAS, PNC asserted counterclaims in the District Court Litigation arising out of Foster's alleged defaults on the Fiesta Way and N. Kilpatrick Obligations;

WHEREAS, in its Memorandum Opinion and Order dated March 25, 2020, the District Court granted summary judgment in favor of PNC on all of Foster's claims and on all of PNC's claims against Foster, and further ruled that its judgment with respect the Fiesta Way Obligation was final and appealable but that the judgment with respect to the N. Kilpatrick Note was not final and thus, as part of this settlement, Foster is agreeing not to appeal the judgment respecting the N. Kilpatrick Note;

WHEREAS, on October 18, 2022, the United States Court of Appeals for the Seventh Circuit affirmed the judgment of the district court with respect to the Fiesta Way Obligation;

WHEREAS, on June 6, 2022, Foster commenced a bankruptcy case under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, captioned *In re Jeffrey Foster*, case no. 22-06377 (the "Bankruptcy Case");

WHEREAS, on December 12, 2022, the district court entered an order staying the District Court Litigation by operation of the automatic stay;

WHEREAS, on December 12, 2022, PNC filed proofs of claim in the Bankruptcy Case, identified as Claims Nos. 9, 10, and 11;

WHEREAS, on December 23, 2022, Foster commenced an adversary proceeding in the Bankruptcy Case, captioned *Jeff Foster v. PNC Bank, National Association d/b/a PNC Mortgage*, A.P. no. 22-00207 (the "Adversary Proceeding");

WHEREAS, in the Adversary Proceeding, Foster asserts claims against PNC allegedly arising out of PNC's servicing of the Fiesta Way Obligation and the N. Kilpatrick Obligation; and

WHEREAS, the Parties wish to resolve the disputes between them, without admitting any liability of one to the other;

NOW, THEREFORE, in consideration of the agreements, provisions, and covenants set forth herein, as of the Effective Date, the Parties each hereby agree as follows:

Initials:
PNC
Foster


1.      Incorporation of Recitals: The recitals set forth above, including all definitions, are incorporated into, and made a part of, this Agreement.

2.      Effective Date: This Agreement will be effective as of the date on which the United States Bankruptcy Court for the Northern District of Illinois enters an order granting a motion under Bankruptcy Rule 9019 authorizing Foster to enter into and perform under this Agreement and the deadline for any appeal of such Order has expired.

3.      Foster's Settlement Payment: Foster shall pay to PNC, and PNC shall receive, Two Million Five Hundred Thousand Dollars ($2,500,000.00), plus any Advanced Costs as set forth in Paragraph 6 herein (the "PNC Net Settlement Amount"), by the Closing of Bidding (defined herein). Foster will pay the PNC Net Settlement Amount in one of the following manners:

      a.      Prior to the Closing of Bidding, Foster may pay the PNC Net Settlement Amount directly to PNC. In that event, the sale (described in Paragraph 5 of this Agreement) will not proceed and Foster will file in the Bankruptcy Case any necessary pleadings to cancel the sale; PNC will not object to cancellation of the sale, provided it has received the PNC Net Settlement Amount and funds have cleared; or

      b.      PNC will receive the PNC Net Settlement Amount from the proceeds of the sale of the Fiesta Way Property; or

      c.      If PNC is the winning bidder after credit bidding in the amount of up to the PNC Net Settlement Amount, and if (i) the sale to PNC on account of the credit bid is confirmed by an order of the Bankruptcy Court, and (2) PNC closes on the sale on its credit bid, and (iii) PNC takes title to the Florida Property (as defined in Section 4 herein), then upon PNC's receipt of title to the Florida Property, (a) the PNC Net Settlement Amount shall be deemed paid in full and PNC shall not seek to recover from Foster any amount in excess of the credit bid, and (b) PNC shall have no further obligation to Foster and Foster shall not be entitled to any proceeds from any subsequent sale of the Florida Property even if such sale proceeds exceed the PNC Net Settlement Amount.

4.      Sale of the Florida Property: On or before March 24, 2023, Foster shall file with the Bankruptcy Court a motion to sell 56 Fiesta Way, Fort Lauderdale Florida (the "Florida Property") and to implement sale and bid procedures ("Sale Motion"), in a form and substance acceptable to PNC, which shall seek authority to sell the Florida Property through an interactive bidding process for an amount greater than or equal to the amount necessary to cause PNC's receipt of the PNC Net Settlement Amount after payment of all closing costs, broker commissions, real estate taxes, and other customary amounts to be paid at closing.

      a.      The bidding procedures component of the Sale Motion and the 9019 Motion are to be scheduled for hearing on April 3, 2023, and Foster shall request they be heard on shortened notice, if needed.

5.      Sale Procedures:

      a.      Sale Process:

Initials:
PNC
Foster

      i.     PNC shall be deemed a "Qualified Bidder" under the sale and bidding procedures up to the amount of the PNC Net Settlement Amount;

      ii.     PNC shall retain the right to credit bid up to the amount of the PNC Net Settlement Amount, which credit bid right may be asserted at any point prior to the close of the interactive bidding process, and if PNC is the winning bidder, then the provisions of Paragraph 3(c) shall apply;

      iii.     PNC shall serve as a "Consultation Party" through the bidding process with right to, among other things, review all bids and all information relating to any bidder's financial ability to close on any proposed sale;

      iv.     The sale will be by an interactive bidding process concluding with open bidding on or before the date that is five (5) months following the date of entry of the 9019 Order (subject to extension only by written agreement signed by PNC) (the "Closing of Bidding");

      v.     Foster shall retain the right to accept a bid and close on the sale of the Florida Property at any point prior to the Closing of Bidding, or to otherwise cancel the interactive bidding process, provided that PNC receives the PNC Net Settlement Amount prior cancelation of the interactive bidding process; and

      vi.     If a bid is accepted at the Closing of Bidding, whether a credit bid to PNC or a third-party bid, and the PNC Net Settlement Amount has not otherwise been received by PNC on or before the Closing of Bidding, the winning bidder shall have thirty (30) days from the Closing of Bidding (subject to written agreement signed by PNC) to close on the sale of the Florida Property and cause the payment of the PNC Net Settlement Amount to be received by PNC (which, in the case of a PNC successful credit bid, shall be satisfied in accordance with Paragraph 3(c) herein).

      b.     On or before March 20, 2023, Foster shall provide PNC with a list of 3 proposed brokers to list the Florida Property and conduct the interactive bidding process for the sale of the Florida Property, together with the terms of such proposed listing and interactive bidding process, subject to the provisions set forth in Paragraph 5(a) herein. PNC shall provide Foster with its selection for the broker (the "Broker") on or before March 24, 2023. Foster shall not retain or seek to retain any broker who constitutes an "insider" or "affiliate" of (i) the Debtor or (ii) any entity in which the Debtor has an ownership interest. As used herein, "insider" shall have the definition given in 11 U.S.C. § 101(31) and "affiliate" shall have the definition given in 11 U.S.C. § 101(2).

      c.     On or before March 24, 2023, Foster shall have filed with the Bankruptcy Court a motion for authority to retain the Broker effective as of the date such motion was filed. For the avoidance of doubt, PNC retains all rights to object to retention of any Broker not approved by PNC or any terms of retention not approved by PNC.

      6.     <u>Taxes and Insurance</u>: Between March 13, 2023, and the later to occur of (i) PNC's receipt of the PNC Net Settlement Amount and (ii) PNC's release of the Fiesta Way and N.

Initials:
PNC
Foster

Kilpatrick Mortgages as set forth in Paragraph 11 herein (the "Covered Period"), the Debtor shall maintain timely and current payment obligations for all real estate taxes and insurance (in amounts and forms acceptable to PNC in its reasonable discretion up to the replacement value of the property, including, but not limited to, wind and flood insurance) for the Florida Property and the real property located at 6201 Kilpatrick Avenue, Chicago, Illinois 60646 (the "Kilpatrick Property"). Should the Debtor fail timely to pay any obligation for real estate taxes or insurance for the Florida Property or the Kilpatrick Property that first becomes due during the Covered Period and PNC advances such amounts (collectively, the "Advanced Costs"), those amounts shall be added to the PNC Net Settlement Amount to be distributed to PNC as set forth herein. If Foster disputes the amount of Advanced Costs to be added to the PNC Net Settlement Amount and paid to PNC, then Foster shall deposit the disputed portion of such Advanced Costs with an escrow agent of PNC's selection to hold pending entry of an order on release of such funds from the Bankruptcy Court. PNC reserves all rights to seek allowance and payment of any fees and expenses, including attorneys' fees, incurred in seeking allowance and payment of any Advanced Costs in accordance with Bankruptcy Code Section 506(b).

7.    <u>Allowance of Claims</u>:  PNC's Proofs of Claim Nos. 10 and 11 shall be allowed in an aggregate amount of the PNC Net Settlement Amount for all purposes in the Bankruptcy Case. PNC's Proof of Claim No. 9 as to the Racine Property shall be allowed and paid in accordance with the loan documents for such loan and Proof of Claim No. 9.

8.    <u>Releases</u>:

a.    <u>Foster's Release of PNC</u>:  Foster, including his representatives and counsel, hereby grants to PNC a full, complete and general release of all claims, demands, debts, liabilities, actions and causes of action, including any counterclaims and defenses, whether asserted or not yet asserted, that he may have against PNC, or any of its affiliates, subsidiaries, officers, directors, employees, agents, or attorneys, as of the Effective Date of the Settlement Agreement, including but not limited to the matters set forth in the District Court Litigation, the Bankruptcy Case, the Proofs of Claim, and the Adversary Proceeding, and any other loan or agreement between the Debtor and PNC, as well as any and all claims asserted or not yet asserted. Notwithstanding the foregoing, excluded from the releases granted by Foster are any obligations under the Settlement Agreement, the Sale Order, or the 9019 Order.

b.    <u>PNC's Release of Foster</u>:  PNC, including its representatives, officers, directors, employees, and counsel, hereby grants Foster a release of all claims, demands, debts, liabilities, actions and causes of action relating to or arising from the Kilpatrick Property, the Florida Property, the N. Kilpatrick Obligations, and the Fiesta Way Obligations and any documents or agreements relating to, memorializing, or modifying the foregoing obligations, that PNC has or may have against Foster as of the Effective Date of the Settlement Agreement. Notwithstanding the foregoing, excluded from the release granted by PNC are (i) any obligations under the Settlement Agreement, the Sale Order, or the 9019 Order, (ii) any claims relating to the Racine Property or (iii) any other loans, agreements, or customer relationships between PNC and Foster.

c.    <u>Foster's Release Effective in Event of Breach</u>:  If Foster should breach any

Initials:
PNC
Foster



provision of this Settlement Agreement, his releases set forth herein and the allowance of PNC's Claim Nos. 10 and 11 in the amount of the PNC Net Settlement Amount and PNC's Claim No. 9 as set forth in Section 7 herein shall be effective notwithstanding such breach.

9.    Debtor's Bankruptcy: Debtor shall comply with all orders of the Bankruptcy Court and shall not seek dismissal or conversion of his Chapter 11 bankruptcy case until PNC's receipt of the PNC Net Settlement Amount. PNC shall not assert any objection to the Debtor's request for dismissal of his bankruptcy case at any time *after* PNC's receipt of the PNC Net Settlement Amount.

10.    Exemption: Debtor stipulates and agrees to waive any exemption in the Florida Property with respect to the PNC Settlement Payment and any other obligations set forth in the Settlement Agreement.

11.    Release of mortgages: PNC shall file and cause to be recorded a release of the mortgage for the Florida Property and the Kilpatrick Property within thirty (30) days following receipt of the PNC Net Settlement Amount.

12.    PNC is secured: Foster acknowledges and agrees, for purposes of the Settlement Agreement, that PNC is fully secured in an amount equal to or greater than the PNC Net Settlement Amount as to the Kilpatrick Property and/or the Florida Property.

13.    Payment Prior to Closing of Bidding: Notwithstanding anything herein, PNC shall accept payment in full of the PNC Net Settlement Amount through a refinancing of the Kilpatrick Property, a refinancing of the Florida Property, or any other means, subject to the approval of the Bankruptcy Court, that results in the full and complete payment to PNC of the PNC Net Settlement Amount by the Closing of Bidding (subject to extension only by writing signed by PNC).

14.    Dismissals: Within five business days of the Effective Date, Foster shall dismiss, with prejudice, all claims in the Adversary Proceeding and all claims in the District Court Litigation, each party to bear its own costs.

15.    Approval of Bankruptcy Court: This Agreement will become effective only upon approval of the Bankruptcy Court. The Parties will jointly file a motion to approve compromise pursuant to Bankruptcy Rule 9019 on the earlier of March 24, 2023 or that date by which such a motion must be filed to secure a hearing before the Bankruptcy Court on April 3, 2023.

16.    Time is of the Essence: Time is of the essence with respect performance under this Agreement. Foster's agreement to adhere to the deadlines contained within this Agreement is a material inducement to PNC's willingness to enter this Agreement. No deadline for the performance of any Party's obligations under this Agreement will be extended, or deemed to have been extended, in the absence of a writing signed by both Parties.

17.    No Admission of Liability: Nothing in this Agreement is, nor shall it be deemed to be, an admission of any liability or wrongdoing by PNC or Foster. PNC disputes the claims alleged by Foster in the District Court Litigation and the Adversary Proceeding and expressly denies any liability or wrongdoing. PNC and Foster have agreed to enter this Agreement to avoid the further expense, inconvenience, and distraction of litigation.


Initials:
PNC
Foster

18.    Entire Agreement: This Agreement shall constitute the entire agreement of the Parties with respect to this settlement, and shall supersede all prior oral or written agreements, understandings, representations or warranties between the Parties as to the terms of this Agreement. Each Party acknowledges and represents that in entering this Agreement, it is not relying on any representations, by or on behalf of any other party, not expressly set forth in this Agreement. This Agreement may not be terminated, modified, amended or changed except by a writing signed by the Parties, and it may not be discharged except by performance in accordance with its terms or by a writing signed by the Party to whom performance is to be rendered.

19.    Enforcement/Waiver: Any waiver by any Party of a breach of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach of such provision or of any breach of any other provision of this Agreement. The failure of a Party to insist upon strict adherence to any term of this Agreement on one or more occasions shall not be considered a waiver or deprive that Party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

20.    Cooperation: The Parties agree that, without receiving further consideration, they will sign and deliver such documents and do anything else that is reasonably necessary in the future to make the provisions of this Agreement effective.

21.    Non-assignment of Claims:  Each Party represents and warrants that it or he maintains full and absolute control over the disposition and release of all claims being released in this Agreement, and that no such claim has been assigned or transferred.

22.    Voluntary Execution and Access to Counsel:   The Parties represent and acknowledge that in executing this Agreement they have sought and obtained the advice of counsel of their choosing and do not rely and have not relied upon any representations or statements made by each other with regard to the subject matter, basis or effect of this Agreement, or otherwise. The Parties acknowledge that this Agreement is executed voluntarily and without any duress, coercion, or undue influence.

23.    Construction: This Agreement shall be construed as if it was drafted by the Parties jointly, and shall not be construed against any Party regardless of which Party drafted any provision hereof.

24.    Severability:  If any provision of this Agreement or the application thereof to any person or circumstance is determined by a court of competent jurisdiction to be invalid, void, or unenforceable, such provision or clause shall be deemed amended to conform to applicable laws so as to be valid and enforceable so long as such amendment does not materially alter the intention of the Parties as expressed in this Agreement. If it does so materially alter such intention, such provision shall be stricken, and the remaining provisions hereof will remain in full force and effect and shall in no way be affected impaired, or invalidated thereby so long as all of the Parties agree that the Agreement shall remain in full force and effect.

25.    Persons Authorized to Sign: Each person signing this Agreement on behalf of any entity represents and warrants that he or she has the full and complete authority to enter this Agreement on behalf of that entity.


Initials:
PNC
Foster

26.   Notices: All notices, demands, and other communications to be given or delivered under, or by reason of, the provisions of this Agreement shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt), (b) upon sending (on the date sent if a business day, or if not sent on a business day on the first business day thereafter) if sent by facsimile or email (with electronic confirmation thereof), or (c) one (1) day after being sent by a nationally recognized overnight carrier to the address set forth below (with confirmation of receipt):

If to PNC:

Marcel C. Duhamel
Vorys, Sater, Seymour and Pease LLP
200 Public Square, 14th Floor
Cleveland, Ohio 44122

mcduhamel@vorys.com

If to Foster:

William Factor
FactorLaw, The Law Offices of William J. Factor Ltd.
105 W. Madison Street, Chicago, Illinois

wfactor@wfactorlaw.com

27.   Execution in Counterpart: This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. For purposes of executing this Agreement, a document signed and transmitted by email or facsimile machine shall be treated as an original document.

28.   No Tax Advice: PNC may issue an IRS Form 1099 if it determines, in its sole discretion, that such issuance is required by IRS regulations. Whether or not PNC issues a Form 1099, PNC has not provided tax advice or any representation concerning the tax implications to Foster of entering this Agreement. Foster is solely responsible for obtaining any tax advice needed to make appropriate decisions regarding his tax obligations as a result of entering this Agreement.

29.   Governing Law, Jurisdiction, and Venue: The validity, effect, and construction of this Agreement any obligations undertaken pursuant to it shall be determined in accordance with the laws of the State of Illinois without regard to conflict of law principles. Any dispute arising out of or related to this Agreement shall be adjudicated exclusively in the United States District Court for the Northern District of Illinois.

30.   Representation by Foster: Foster represents and warrants that he has read and understood this Agreement and that he has been advised by counsel of his choosing regarding the meaning and effect of this Agreement.

Initials:
PNC
Foster



31.   This Settlement Agreement shall inure to the benefit of and bind the successors. heirs and assigns of both Parties hereto.

STATE OF ILLINOIS   §

COUNTY OF COOK   §

Jeffrey Foster

The foregoing instrument was sworn to and subscribed before me this 23rd day of March, 2023 by Jeffrey Foster.

CARINA SUAREZ
Official Seal
Notary Public - State of Illinois
My Commission Expires Mar 3, 2026

NOTARY IN AND FOR THE STATE OF ILLINOIS

My commission expires: 03/03/2026

PNC Bank, National Association,
Thomas W. Morris, Officer

Initials:
PNC
Foster ___