**United States Bankruptcy Court, Northern District of Illinois**

| Name of Assigned Judge | A. Benjamin Goldgar | CASE NO. | 22 B 6377 |
|---|---|---|---|
| **DATE** | July 2, 2024 | **ADVERSARY NO.** | |
| **CASE TITLE** | Jeffrey Foster | | |
| **TITLE OF ORDER** | Order overruling jurisdictional objection to application of William J. Factor for compensation | | |

**DOCKET ENTRY TEXT**

The objection of Jeffrey Foster to the court's subject-matter jurisdiction to hear William J. Factor's application for compensation is overruled. A separate order will be entered setting a discovery cutoff and a status hearing.

**[For further details see text below.]**

---

**STATEMENT**

This dismissed chapter 11 case is before the court for ruling on a portion of former debtor Jeffrey Foster's objection to the application of William J. Factor for compensation as Foster's counsel. Foster contends that because the case is dismissed, the court lacks subject-matter jurisdiction to consider the application.

For the reasons below, Foster's jurisdictional objection will be overruled.

**1. Facts**

The few relevant facts come from the parties' papers and the court's docket. No facts are in dispute.

In June 2022, Foster filed a petition under chapter 11 of the Bankruptcy Code. About a month later, Foster moved under section 327 of the Code to employ Justin Storer, a lawyer at Factor's firm, as his counsel. Attached to the application was an engagement letter that provided for a $25,000 retainer and compensation for Storer and other lawyers at the firm on an hourly basis. The court granted the motion.

Most of the activity in the case concerned a dispute between Foster and PNC Bank, N.A., Foster's largest creditor. In January, Foster and PNC agreed to mediate the dispute. The mediation produced a settlement that the court approved. Under the settlement, Foster

## STATEMENT

agreed to sell some Florida real estate, and the real estate was eventually sold.  With the PNC dispute resolved, Foster moved in November 2023 to dismiss the bankruptcy case.  On November 27, 2023, the court granted the motion.  Four days later, the case was closed.

On February 26, 2024, Factor (who had also appeared for Foster in the case) filed his first and final application for compensation.[1]  In the intervening three months, Foster and Factor had sought to resolve a disagreement over the fees Foster owed.  Foster claimed that although the engagement letter had said Factor would be paid on an hourly basis, he and Factor had later changed the arrangement.  Under the revised arrangement, Foster maintained, he agreed to pay a flat rate of $50,000 "without trial" and $100,000 "with trial."  With the disagreement still unresolved, Factor applied to the court for $168,992.50 as his attorney's fees and $6,565.62 in reimbursable expenses.

On the March 25 presentment date, Foster appeared through a new attorney and objected to the application.  Among other things, Foster argued that the dismissal of the case had deprived the court of subject-matter jurisdiction.  The court explained that *In re Sweports, Ltd.*, 777 F.3d 364 (7th Cir. 2015), held otherwise and so doomed Foster's argument.  The court then set a briefing schedule on the application.

Rather than file a response on the due date, Foster moved "for leave to bifurcate procedure or to commence discovery."  In asking for "bifurcation," Foster sought to address the jurisdictional question first, leaving his substantive objections to the fee application, along with discovery, for later (if at all).  The parties have since submitted simultaneous memoranda addressing jurisdiction.

### 2. Discussion

Foster's jurisdictional objection will be overruled.  As the court explained in March, the court of appeals for this circuit disposed of Foster's objection in *Sweports*, holding that even after a chapter 11 case has been dismissed, the bankruptcy court retains subject-matter jurisdiction to consider applications of professionals for compensation.  Foster's efforts to dispose of *Sweports* are unpersuasive.

---

[1]    The application calls itself the application of "FactorLaw," a name that Factor's firm sometimes uses.  But the bankruptcy court's local rules permit appearances only by individual attorneys, not by firms.  L.R. 2090-5(A)(3).  Foster was allowed to retain Storer (and so other lawyers at his firm), not "FactorLaw," and Storer and Factor filed appearances, not "FactorLaw."  For the sake of economy, this decision will call the application "Factor's application."

-2-

## STATEMENT

Bankruptcy courts unquestionably have subject-matter jurisdiction to address the retention and compensation of professionals in bankruptcy cases.  A bankruptcy court has jurisdiction over all "civil proceedings arising under title 11" or "arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Proceedings to retain professionals arise under title 11, specifically under sections 327(a) and 1107(a), 11 U.S.C. §§ 327(a), 1107(a).  Proceedings to determine the compensation of retained professionals also arise under title 11, specifically under section 330(a), 11 U.S.C. § 330(a).  Because the court's authority over the retention and compensation of professionals arises under the Code itself, they are "core" bankruptcy matters.  28 U.S.C. § 157(b)(2)(A); *In re Boot Hill Biofuels, LLC*, No. 08-13128, 2009 WL 3053730, at *1 n.4 (Bankr. D. Kan. Sept. 17, 2009); *In re Bressman*, 214 B.R. 131, 132 (Bankr. D.N.J. 1997).

Foster does not contest these fundamental principles but argues that this court lost jurisdiction when his case was dismissed.  He is mistaken.  Along with statutory grants of subject-matter jurisdiction, federal courts have what is called "ancillary jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994); 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice & Procedure* § 3523.2 at 212-13 (3d ed. 2008).  Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them."  *Kokkonen*, 511 U.S. at 378.

In a civil action, ancillary jurisdiction grants a district court the power not only to enforce its judgments but also to entertain related post-judgment disputes over attorney's fees and costs.  *Nichols v. Longo*, 22 F.4th 695, 698 (7th Cir. 2022); *O'Donnell v. Saul*, 983 F.3d 950, 955 (7th Cir. 2020); *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299-1300 (7th Cir. 1995).  In fact, addressing fees and costs has been called "[o]ne of the best-established uses of ancillary jurisdiction."  *See* Charles Alan Wright, et al., *supra*, § 3523.2 at 218-19 (stating that "[a]ncillary jurisdiction supports disputes concerning costs and fees for the case that invoked federal subject matter jurisdiction").

In *Sweports*, the Seventh Circuit held that bankruptcy courts, like district courts, have ancillary jurisdiction, and so they have jurisdiction to consider questions of professional compensation even after a bankruptcy case has been dismissed.  *Sweports*, 777 F.3d at 367-68.  *Sweports* concerned the compensation of counsel to a creditors' committee in a chapter 11 case and compensation of the committee's financial advisor.  *Id.* at 365.  When the bankruptcy court denied confirmation of both the debtor's plan and a competing plan, the U.S. Trustee moved to dismiss the case, and the case was dismissed.  *Id.* at 366.  Several weeks later, counsel and the financial advisor applied for compensation.  *Id.*  The bankruptcy court denied the application for lack of jurisdiction, reasoning that the applications sought compensation from the bankruptcy estate, and with the case dismissed, the estate had ceased to exist.  *See In re Sweports, Ltd.*, 511 B.R. 522, 524-25 (Bankr. N.D. Ill. 2014).

On appeal, though, the Seventh Circuit disagreed.  The court of appeals acknowledged that the estate no longer existed after dismissal, and so there were no estate assets from which the

## STATEMENT

applicants could be paid. *Sweports*, 777 F.3d at 366. But, the court said, the bankruptcy court could still decide whether they "had a valid claim to a fee in the amount [they were] seeking," *id.* at 366-67, an order they "could take into state court," *id.* at 367. The court of appeals explained that a bankruptcy court has jurisdiction to award compensation to professionals while a case is pending, and even after the case is dismissed, the court "has besides its ordinary jurisdiction a 'clean-up' jurisdiction ('ancillary' jurisdiction, it is commonly called) to take care of minor loose ends." *Id.* One of those loose ends is the compensation of estate professionals. *Id.* (noting that the dismissal order left "a loose end . . . dangling – [the] claim[s] for fees").[2]

Factor's request for compensation falls squarely under *Sweports*. Foster retained Factor under section 327(a) to serve as his lawyer in the chapter 11 case. Like the case in *Sweports*, Foster's case was eventually dismissed. Because a disagreement over Factor's fees arose, Factor delayed formally requesting a compensation award from the court for roughly 90 days while he and Foster tried to resolve their differences. Once it became clear they could not be resolved, Factor applied for compensation under section 330(a). As in *Sweports*, had Factor applied sooner and sought an order before the case was dismissed, the court would "doubtless have issued it." *Sweports*, 777 F.3d at 367. Now, the pending application is a "loose end" for this court to "clean up." *Id.* *Sweports* says the court can clean it up.

Faced with the obvious obstacle *Sweports* presents, Foster offers four arguments for avoiding it. First, he says that Factor's application is moot because there is no longer a bankruptcy estate from which he can be paid and so no role for the bankruptcy court to play. This, of course, was the bankruptcy court's theory in *Sweports*, *see Sweports*, 511 B.R. at 524-25, the very theory the court of appeals rejected on appeal, finding it correct as a factual matter (because the estate "had no assets" post-dismissal) but irrelevant (because the court could still "determine that [the applicants] had a valid claim to a fee"), *Sweports*, 777 F.3d at 366-67. Whatever the merits of the original bankruptcy court decision, the decision of the court of appeals is what matters now. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (observing that in a hierarchical court system, trial judges "must follow the decisions of this court whether or not they agree").

Foster next tries to distinguish *Sweports* because Factor has "an adequate remedy in state court," and the applicants in *Sweports* did not. True, the court of appeals in *Sweports* observed that as committee professionals the applicants had no contractual relationship with debtor Sweports itself. *Sweports*, 777 F.3d at 366. Without an order from the bankruptcy court, then, the applicants "would have no basis for pursuing a claim against the company in state court." *Id.*

---

[2]     The court of appeals was careful, though, to say that the bankruptcy court could only rule on the applicants' requests for compensation. Collection would have to occur elsewhere. *Id.* at 367-368; *see In re Sweports, Ltd.*, 565 B.R. 129, 135-36 (Bankr. N.D. Ill. 2017) (rejecting for lack of jurisdiction the applicants' efforts to enforce the compensation award entered on remand).

## STATEMENT

But nothing in *Sweports* suggests the decision *limits* a bankruptcy court's ancillary jurisdiction to the compensation of a non-debtor's professionals, relegating a debtor's professionals to state courts. Courts have cited *Sweports* as conferring jurisdiction over all post-dismissal compensation requests, not just requests from a specific party's professionals. *See, e.g., In re Elliott*, No. 19-cv-02366-PAB, 2020 WL 6946561, at *3 (D. Colo. Nov. 24, 2020); *Morgan & Bley, Ltd. v. Victoria Grp., Inc.*, No. 14 C 6567, 2015 WL 2258416, at *4 (N.D. Ill. May 11, 2015); *In re Zambrano*, No. 22 B 04462, 2022 WL 16646807, at *5 (Bankr. N.D. Ill. Nov. 3, 2022); *In re Salazar*, No. 15-13194 ts13, 2016 WL 7377043, at *3 (Bankr. D.N.M. Dec. 19, 2016).

Next, Foster argues that considerations of judicial economy warrant a finding of no jurisdiction, especially when the matter "is no longer meaningfully impacted by the Bankruptcy Code." Again, Foster is mistaken. Considerations of judicial economy do underlie ancillary jurisdiction, *see Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978), but they support the exercise of ancillary jurisdiction here. Factor's compensation will be determined under the standards in section 330(a) of the Code, standards bankruptcy courts know well and state courts do not. His compensation will depend on the application of those standards to the work he performed in Foster's bankruptcy case, a case the bankruptcy court knows (having presided over it) and a state court would not. No efficiencies could be achieved by sending to the state court what would be a "core" bankruptcy matter but for the bankruptcy case's dismissal.

Finally, Foster complains that by waiting to seek compensation, Factor "[s]at on his rights." True, Factor waited to file his application – but he waited while he tried to work out his differences with Foster, hoping to prevent the full-blown litigation that has now ensued. The delay was a modest three months, and Foster never suggests the delay harmed him in any way. As in *Sweports*, Factor's "postponement in filing . . . hurt no one." *Sweports*, 777 F.3d at 367. Undaunted, Foster wonders whether a professional could wait a year, five years, even ten. "[W]here does it end?" he asks. But that hypothetical question, fascinating though it may be, need not be answered in case where the applicant's delay was only three months.

### 3. Conclusion

The objection of Jeffrey Foster to the court's subject-matter jurisdiction to hear William J. Factor's application for compensation is overruled. A separate order will be entered setting a discovery cutoff and a status hearing.

Dated: July 2, 2024

_____
A. Benjamin Goldgar
United States Bankruptcy Judge